**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO.: 9:11cv80987**

| | |
|---|---|
| KRATOM LAB, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DANIEL MANCINI and DAVID FIORE, | ) |
| individually, and DOUBLE D'S | ) |
| TOBACCO OF STUART, INC., RYO | ) |
| CIGARETTES OF ST. LUCIE, LLC and | ) |
| RYO CIGARETTES OF BOCA, LLC, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**COMPLAINT – JURY TRIAL DEMANDED**

COMES NOW, Plaintiff, KRATOM LAB, INC., by and through its undersigned attorney and for its complaint against Defendants, DANIEL MANCINI and DAVID FIORE, individually and DOUBLE D'S TOBACCO OF STUART, INC. and RYO CIGARETTES OF ST. LUCIE, LLC and RYO CIGARETTES OF BOCA, LLC, state as follows:

**INTRODUCTION**

1.     Since December of 2009, Plaintiff has manufactured, marketed, sold and distributed herbal incense and incense related products throughout the United States through both direct sales its retail location and via the Internet.  Defendants, who are direct competitors of the Plaintiff, have knowingly and willfully infringed upon Plaintiff's federally registered trademark by using various domain names and websites that incorporate Plaintiff's trademark to profit from the goodwill and popularity of

Plaintiff's products.  Defendants have intentionally engaged in such conduct to misdirect potential customers of Plaintiff to Defendants' websites.  In addition to infringing on Plaintiff's trademark through online activity and conduct, Defendants have also infringed on Plaintiff's trademark in the advertising and sale of its herbal incense products through its retail locations in South Florida.

2.      As redress for Defendants' intentional and flagrant infringement upon Plaintiff's trademark, Plaintiff has sued for: trademark infringement, dilution, cyberpiracy, cybersquatting, and counterfeiting pursuant to federal law; trademark infringement, dilution, unfair and deceptive trade practices, false advertising and unfair competition under Florida law and common law unfair competition, misappropriation and interference with prospective business advantage and business expectancies.  Plaintiff seeks remedies in the form of statutory, actual, treble and punitive damages, attorney's fees and costs, declaratory relief and preliminary and permanent injunctive relief.

## PARTIES

3.      Plaintiff, KRATOM LAB, INC. ("Kratom Labs") is a corporation duly organized under the laws of the state of Florida, with its principal place of business in Boynton Beach, Palm Beach County, Florida.

4.      Defendant, DANIEL MANCINI ("Mancini"), upon information and belief, is an individual residing in Palm Beach Gardens, Palm Beach County, Florida.

5.      Defendant, DAVID FIORE ("Fiore"), upon information and belief, is an individual residing in West Palm Beach, Palm Beach County, Florida.

6.     Defendant, DOUBLE D'S TOBACCO OF STUART, INC. ("Double D's"), is a corporation duly organized under the laws of the state of Florida, with its principal place of business in Stuart, Martin County, Florida.

7.     Defendant, RYO CIGARETTES OF BOCA, LLC ("RYO of Boca Raton"), is a limited liability company duly organized under the laws of the state of Florida, with its principal place of business in Boca Raton, Palm Beach County, Florida.

8.     Defendant, RYO CIGARETTES OF ST. LUCIE, LLC ("RYO of St. Lucie") is a limited liability company duly organized under the laws of the state of Florida, with its principal place of business in St. Lucie, St. Lucie County, Florida

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. Sections 1331 and 1338(a) as the Plaintiff's cause of action arises under The Federal Trademark Act ("The Lanham Act"), 15 U.S.C. Section 1051, et seq.  Further, this Court has jurisdiction over Plaintiff's Florida state statutory and common law claims pursuant to 28 U.S.C. Section 1367.

10.     This Court has personal jurisdiction over the Defendants as each Defendant is located, domiciled, doing business and otherwise found in Florida.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District and all Defendants reside in the District.

## STATEMENT OF FACTS

12.     In December of 2009, Plaintiff created, produced and began to sell certain incense products of a proprietary nature having unique herbal and affective properties

(the "Original Incense Product"). The Original Incense Product is of a particular design and quality that was relatively low cost and has been sold to consumers throughout the United States.

13.    Since first creating and selling the Original Incense Product, the Plaintiff has sold every unit of the Original Incense Product in packaging that bore the name "Mr. Nice Guy" (the "Word Mark") and incorporated the Word Mark in an original graphic design logo (the "Design Mark").   The Word Mark was originally an arbitrary designation for the Original Incense Product, but one which carries with it certain suggestive connotations.   The Design Mark, as used in the packaging of the Original Incense Product, has a particular impact on the eye, carries suggestive and particular connotations to the brain, and constitutes trade dress (the Word Mark and Design Mark are referred to collectively herein as the "Trademark").

14.    Plaintiff has continued to use the Trademark in interstate commerce since December of 2009 in connection with the marketing, sale and distribution of the Original Incense Product.

15.    Due to the popularity and demand for the Original Incense Product, Plaintiffs sought to market and distribute the Original Incense Product via the Internet and secured the domain www.mr-nice-guy.com (the "Website") in or about January, 2010.

16.    Plaintiff lawfully marketed the Original Incense Product directly to consumers throughout the United States through both its retail location in Florida and via the Website and expended great effort and expense in order to create name recognition and market value for the Original Incense Product and Trademark.  Plaintiff's marketing

efforts have resulted in a market and customers who have been conditioned and otherwise associate the Trademark with the Original Incense Product and the Trademark is well-known throughout the United States in the herbal incense market.

17.    Due to the tremendous demand, beginning in or about July of 2010, Plaintiff's began to sell the Original Incense Product in bulk directly to third party retail locations ("Third Party Retailers") throughout Florida and the United States with the understanding the Third Party Retailers would sell the Original Incense Products directly to consumers.  Every unit of the Original Incense Product that was sold to Third Party Retailers was individually packaged in bags that were adorned with the Trademark.  At no time was any Third Party Retailers given the right to represent themselves as the owners of the Trademark or the creators of the Original Incense Product.

18.    In approximately July of 2010, Defendants Mancini and Fiore contacted Plaintiff regarding purchase of the Original Incense Product in bulk for retail sale to consumers.  At that time, Mancini and Fiore operated a tobacco store located at 2209 Belvedere Road, West Palm Beach, Florida (the "West Palm Beach Retail Location").  Upon information and belief, the West Palm Beach Retail Location is owned and operated by Defendants Mancini and Fiore through Defendant Double D's.

19.    Plaintiff agreed to sell the Original Incense Products to Defendants but at no time did Plaintiff expressly or implicitly consent to Defendants representing themselves as the owner of the Trademark or the manufacturer of the Original Incense Product.

20.    On August 24, 2010, Plaintiff applied for a Federal Trademark for both the name Mr. Nice Guy, as well as the distinctive graphic mark used on its packaging and in

the marketing.  The Trademark was officially registered April 19, 2011.  The Trademark Registration of the Plaintiff is attached hereto as **Exhibit "A"**.

20.     Shortly after agreeing to sell the Original Incense Product to the Defendants, Plaintiff began receiving requests from the Defendants for over 5,000 units per week and Defendants consistently ordered at least that many units per week for the first several months after the initial shipment of the Original Incense Product to Defendants.  During this time, Plaintiff became aware that Defendants expanded from their initial location in West Palm Beach to five retail locations for the sale of tobacco, herbal incense and other products in Boynton Beach, Port Saint Lucie, Stuart and Boca Raton, Florida (the "Retail Locations").   Upon information and belief, Defendants Mancini and Fiore operated the two Boca Raton locations through Defendant RYO of Boca Raton, operated the Saint Lucie location through Defendant RYO of St. Lucie and operated the Boynton Beach location through Defendant Double D's.

21.     Plaintiff began receiving information that Defendants Mancini and Fiore were representing to customers at the Retail Locations that they were the makers of the Original Incense Product and the owners of the Trademark.  The representations included both oral statements to potential customers and placards placed in the store windows of the Retail Locations that read Defendants were the makers of the Original Incense Product in the course of advertising their own blend of herbal incense under the name of Barely Legal ("Barely Legal Incense").

22.     Plaintiff, through its representatives Dylan Harrison and John Shealey, confronted the Defendants in person at the West Palm Beach Retail Location regarding

the misrepresentations.   Defendants admitted to the misrepresentations and agreed to cease.

23.     Shortly thereafter, Plaintiff began to investigate how Defendants were able to distribute a consistently high volume of the Original Incense Products through the Retail Locations.   Upon investigation, it was discovered that Defendant Mancini was marketing Barely Legal Incense through the purchase of a domain name that incorporated Plaintiff's Word Mark, mrniceguywholesale.com.     Defendant Mancini secured the domain through www.domainsbyproxy.com ("By Domains").   By Domains is an online company that offers "privacy services" to Internet users who "don't want their personal information available for everyone to see."    However, when Plaintiff advised By Domains that the domains it had registered infringed upon the Trademark, By Domains revealed that mrniceguywholesale.com was registered by "Danny Mancini."

24.     In addition to using Plaintiff's Word Mark in the purchase of the foregoing domain name, the website read "Our storefront has moved.  Click here to Shop Mr. Nice Guy Products."  The link directs the user to barely-legal-incense.com where Barely Legal Incense is marketed and Mr. Nice Guy products are marketed at the bottom of the page and it reads that Barely Legal is "from the guys who brought you Mr. Nice Guy." Plaintiff did not authorize or consent to the use of the Domains or to the content contained therein.

25.     Plaintiffs again confronted Defendants Mancini and Fiore regarding both the misrepresentations that were ongoing in the Retail Locations and the use of the mrniceguywholesale.com.   Defendants again admitted to the misrepresentations and

infringement and agreed to cease and Defendants temporarily removed mrniceguywholesale.com. However, within a few days, the website was operating again.

26.     Upon further investigation, Plaintiff discovered that the Defendants had purchased from the Google search engine the keyword "Mr. Nice Guy" to get their sites at the top of the search results page when a Google search is performed using the search term "Mr Nice Guy." In conjunction with Defendants purchase of domains utilizing Plaintiff's Word Mark, Defendants conduct diverted customers who were searching for the website operated by Plaintiff, mr-nice-guy.com, to the websites operated by Defendants.

27.     Plaintiffs subsequently became aware of additional websites being operated by Defendants that used the Word mark in the domain name, www.mrniceguyincense.org and mrniceguy-incense.com. On www.mrniceguyincense.org Defendant's fraudulently advertised Barely Legal Incense as a product of the Plaintiff, as it reads "ATTENTION ALL MR NICE GUY SMOKERS The new blend, (which by the way is legal in **all 50 states**), Barely Legal is some INTENSE stuff. **I expected the new blend from Mr. Nice Guy** to be good…but this stuff is amazing!" (emphasis supplied). On mrniceguy-incense.com which claims to be the "Official Site" for Mr. Nice Guy and the Trademark appears in the domain name subject line as a savicon (collectively, mrniceguywholesale.com, www.mrniceguyincense.org and mrniceguy-incense.com are the "Domains").

28.     On February 23, 2011 a web user who identified himself as "Danny from Double D's" posted the following on Mr. Nice Guy's online blog: "I am one of those people trying to pull your product from the shelves and replace it with my Barely Legal

Blend because its better!  I had to ride the Mr. Nice Guy wave to get my product out there you retards!  Thanks for the piggy back, we will continue to use your name to our own benefit!  No hard feelings." Upon information and belief, Plaintiff's allege this person to be Defendant Mancini.

29.     After discovery of the Domains, By Domains was contacted again and responded that it would contact the registrant and advise if the registrant failed to respond.  Mr. Mancini responded to the inquiries regarding ownership of the Domains and admitted that he had operated mrniceguy-incense.com and mrniceguyincense.org since September 23, 2010.  In response to the demand that he cease operations of these websites, he replied "I have to hand over my blogs which I have spent hundreds of hours writing content for and optimizing, because they just trademarked a word…" and he further complained that doing so would cause him to "lose a large chunk of my income." Mancini ultimately refused to cease operating the Domains.

30.     Upon information and belief, Defendant Fiore both knew of and consented to Defendant Mancini's registration of the Domains and operation of same, including the use of the Trademark, for the purpose of diverting potential customers of Plaintiff to Defendants under the guise that customers were contacting Plaintiffs so Defendants could sell such customers Barely Legal Incense instead of the Original Incense Product.

31.     Defendants Mancini and Fiore personally know of Plaintiff's rights in the Trademark having purchased thousands of units of the Original Incense Products, all adorned with the Trademark.  In addition to previously selling the Original Incense Product at the Retail Locations, Plaintiff notified Defendants multiple times of the infringements and other violations of Plaintiff's rights and demanded that Defendants

cease.   On several occasions, Defendants briefly ceased operation of the offending websites; however, within a matter of days, the websites were operating again.  However, following most of the demands to cease and desist, Defendants ignored Plaintiff.

32.     Defendants exact duplication and use of the Trademark reveals that Defendants' conduct described herein was intentional and with the intent to confuse consumers into believing Defendants were the Plaintiff.

33.     As set forth herein, Defendants have used the Trademark prominently in their advertising and marketing to consumers and have utilized the Word Mark to establish domain names that attract consumers who are seeking Plaintiff's Original Incense Product.

34.     Defendants did not purchase the Original Incense Product from the Plaintiff and instead represented to the consuming public that Defendants were the Plaintiff and were the manufacturer and distributor of the Original Incense Product.

35.     Defendants use of the Trademark as set forth herein has been without the consent or permission of the Plaintiff and has been done so in defiance of the Plaintiff's explicit demand that Defendant cease and desist in the use of the Trademark in the manner set forth herein.

36.     Barely Legal Incense is substantially similar to the Original Incense Product, but is of inferior design and quality to the Original Incense Product.  Defendants have been able to sell the Barely Legal Incense Product by misappropriating the Trademark.

37.     Despite actual knowledge of Plaintiff's rights in the Trademark, Defendants are still actively involved in the continued willful infringement of such rights and other unlawful acts complained of herein.

38.     As a result of directing the infringing activities both in their individual capacities and through the other Defendants, Defendants Mancini and Fiore are jointly and severally liable with Defendants Double D's, RYO Cigarettes of St. Lucie and RYO Cigarettes of Boca Raton for the judgment to be rendered.

**COUNT I**
**Violation of 15 U.S.C. § 1125(a) Federal Unfair Competition**
**and False Advertising Against All Defendants**

39.     Paragraphs 1 through 38 are incorporated by reference as if fully set forth herein.

40.     Defendants' use of the Trademark in interstate commerce without the consent or permission of Plaintiff for the purpose of manufacturing, marketing and distribution of counterfeit and infringing merchandise had caused and continues to cause confusion, mistake and deception in the minds of the public.

41.     The misappropriation of the Trademark by Defendants on and in connection with goods substantially identical or similar to those of Plaintiff is part of a deliberate plan to trade on the valuable goodwill established in the Trademark.  With knowledge of Plaintiff's ownership of the Trademark, and with deliberate intention to unfairly benefit from the goodwill generated thereby, the actions of the Defendants have been executed with willful disregard of Plaintiff's rights.

42.     The use of the Trademarks by Defendants is a use in interstate commerce of words and/or symbols, a false designation of origin and/or a false description and/or

misrepresentation. Such use has misled and deceived, and will continue to mislead and deceive, the public as to the origin of Defendants' goods and has caused the public to mistakenly believe that Defendants business activities and goods originate from, are sponsored by, or are in some way associated with Plaintiff. By imitating, counterfeiting, and infringing Plaintiff's Trademark in interstate commerce, Defendants have violated 15 U.S.C. § 1125(a).

43.     Defendants actions described herein have resulted in profits to Defendants and have thereby deprived Plaintiff of revenue to which it is entitled.

44.     Defendants' unauthorized use of the Trademark regarding goods substantially similar to those of Plaintiff was and is being conducted with full knowledge of Plaintiff's rights. Thus, Defendants have willfully infringed and are infringing such rights in violations of 15 U.S.C. § 1125(a).

45.     WHEREFORE, Plaintiff demands judgment against Defendants as set forth in the Prayer for Relief.

## COUNT II
## Violation of 15 U.S.C. § 1125(c) Federal Trademark Dilution Against All Defendants

46.     Paragraphs 1 through 38 are incorporated by reference as if fully set forth herein.

47.     Plaintiff's Trademark has been famous and distinctive amongst herbal incense purchasers since at least as early as January of 2010.

48.     Defendants' use of the Trademark in interstate commerce has been for their commercial and pecuniary gain.

49.     Defendants began using the Trademark after the Trademark had become famous and well known amongst purchasers of herbal incense products.

50.     Defendants use of the Trademark in connection with the counterfeit and infringing merchandise dilutes, and presents a likelihood of dilution, of the distinctive quality and value of and tarnishes the public image of the Trademark, and harms the reputation of the Plaintiff.

51.     Defendants adopted and are displaying the Trademark with full knowledge of Plaintiff's rights to its famous mark and with the willful intention to trade on Plaintiff's reputation, as embodied in the Trademark or to cause dilution of the Trademark. Thus, Defendants have willfully violated Plaintiff's rights under 15 U.S.C. § 1125(c).

52.     WHEREFORE, Plaintiff demands judgment against Defendants as set forth in the Prayer for Relief.

### COUNT III
### Violation of U.S.C. § 1114(1)(a) Federal Trademark Infringement
### Against All Defendants

53.     Paragraphs 1 through 38 are incorporated by reference as if fully set forth herein

54.     Plaintiff owns a valid Trademark entitled to protection under the Lanham Act.

55.     Defendants' use of mrniceguywholesale.com, mrniceguyincense.org, and mrniceguy-incense.com and the misrepresentation at the Retail Locations that Defendants own the Trademark and are the creators of the Original Incense Product has and is likely to continue to cause confusion and mistake among consumers or to deceive consumers as to whether the Domains are owned and/or affiliated with the Plaintiff.

56.     Defendants conduct constitutes trademark infringement pursuant to

Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a) and Plaintiff has been injured and continues to be injured by this infringement .

57.     WHEREFORE, Plaintiff demands judgment against Defendants as set forth in the Prayer for Relief.

## COUNT IV
## Violation of U.S.C. § 1125(d) Federal Trademark Cyberpiracy Against Defendants Mancini and Fiore

58.     Paragraphs 1 through 38 are incorporated by reference as if fully set forth herein.

59.     The Trademark has been famous and distinctive from at least as early as January of 2010.

60.     Defendants have registered and used the domain mrniceguywholesale.com, mrniceguyincense.org, and mrniceguy-incense.com with the bad faith intent to profit from the use of the Trademark.

61.     Defendants' use of domain names and content that are confusingly similar to the Trademark is likely to cause consumers mistakenly to believe that mrniceguywholesale.com, mrniceguyincense.org, and mrniceguy-incense.com are websites sponsored or approved of by Plaintiffs, or that mrniceguywholesale.com, mrniceguyincense.org, and mrniceguy-incense.com are otherwise affiliated with or have obtained permission from Plaintiff.  Defendants' use of these domain names incorporating "Mr. Nice Guy" is also dilutive of Plaintiff's Word Mark.

62.     By engaging in the activities described above, Defendants are engaging in cyberpiracy in connection with products distributed in interstate commerce in violation of 15 U.S.C. § 1125(d).

63.     WHEREFORE, Plaintiff demands judgment against Defendants as set forth in the Prayer for Relief.

## COUNT V
## Federal Trademark Counterfeiting Against Defendants Mancini and Fiore

64.     Paragraphs 1 through 38 are incorporated by reference as if fully set forth herein.

65.     The depictions of Plaintiff's Trademark in the Domains and in the content on the Domains identified in this Complaint are "spurious" within the meaning of Section 45 of the Lanham Act, 15 U.S.C. § 1127, and 18 U.S.C. § 2320(e)(1)(A), because they are not "genuine or authentic."

66.     The spurious depictions of Plaintiff's Trademark illustrated in this Complaint are used for trafficking in goods within the meaning of Section 43(d)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(d)(1)(A), and 18 U.S.C. §2320(e)(1)(A).

67.     The spurious depictions of Plaintiff's Trademark in the Domains identified in this Complaint are "identical with, or substantially indistinguishable from" the genuine Trademark within the meaning of Section 45 of the Lanham Act, 15 U.S.C. § 1127, and 18 U.S.C. § 2320 (e)(1)(a)(ii).

68.     The goods advertised with spurious depictions of Plaintiff's Trademark on the Domains are identical to the goods for which that mark is registered within the meaning of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), and 18 U.S.C. § 2320(e)(1)(A)(ii).

69.     The spurious depictions of Plaintiff's Trademark illustrated in this Complaint are used "in connection with" the goods covered by Plaintiff's federal

trademark registration within the meaning of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), and 18 U.S.C. § 2320(e)(1)(A)(iii).

70.     The spurious depictions of Plaintiff's Trademark illustrated in this case is "likely to cause confusion, to cause mistake, or to deceive" within the meaning of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), and 18U.S.C. §320(e)(1)(A)(iv).

71.     By their acts aforesaid, Defendants have engaged, and are engaged, in the counterfeiting of Plaintiff's Trademark within the meaning of Sections 32(1) and 45 of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1127

72.     The irreparable harm to Plaintiff and the public resulting from Defendants' conduct, combined with the willfulness of Defendants' conduct and the manifest need for deterrence, warrant not only injunctive relief but also statutory damages pursuant to the Anticounterfeiting Consumer Protection Act of 1996, Pub. L. No. 104-153, § 7, 110 Stat. 1386 (July 2, 1996), codified at Section 35(c) of the Lanham Act, 15 U.S.C. § 1117(c), as well as costs and attorney's fees pursuant to Section 35(c) of the Lanham Act, 15 U.S.C. § 1117(c).

73.     WHEREFORE, Plaintiff demands judgment against Defendants as set forth in the Prayer for Relief.

## COUNT VI
## Federal Cybersquatting Against Defendants Mancini and Fiore

74.     Paragraphs 1 through 38 are incorporated by reference as if fully set forth herein.

75.     Defendants have registered, and are trafficking in, using, and maintaining Internet domain names incorporating and imitating Plaintiff's federally registered Trademark with the bad faith intent to profit from the goodwill associated with that mark.

16

76.     Plaintiff's Trademark is distinctive, and had acquired distinctiveness, long before Defendants registered the Domains identified in this Complaint.

77.     The Domains identified in this Complaint are identical and/or confusingly similar to Plaintiff's Trademark.

78.     Defendants do not have any intellectual property or other rights in the Trademark.

79.     Defendants have never used the Trademark to identify themselves, and have never been commonly known by the name Mr. Nice Guy prior to the illegal activities and conduct set forth herein.

80.     Defendants have never made any use of the Trademark in connection with the offering or sale of any *bona fide* good or service prior to the unlawful and unpermitted use of the Trademark as set forth herein.

81.     Defendants have never made any *bona fide* fair use of the Trademark on any website prior to the unlawful and unpermitted use of the Trademark as set forth herein.

82.     Defendants have registered the Domains identified in this Complaint and have used those Domains in a scheme to divert consumers from the Plaintiff's website for Defendants' mutual commercial gain, resulting in a likelihood of confusion as to the source, sponsorship, affiliation or endorsement.

83.     By their acts aforesaid, Defendants have violated the Anticybersquatting Consumer Protection Act ("ACPA"), Pub. L. No. 106-113, 113 Stat. 1501 (1999), codified at Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d), causing irreparable injury to Plaintiff and the public.

84.     WHEREFORE, Plaintiff demands judgment against Defendants as set forth in the Prayer for Relief.

**COUNT VII**
**Florida Trademark Dilution Against All Defendants**

85.     Paragraphs 1 through 38 are incorporated by reference as if fully set forth herein.

86.     This Court has original jurisdiction over this pendent claim pursuant to 28 U.S.C. § 1338(b) and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

87.     Defendants' use of Plaintiff's Trademark has diluted, and is likely to dilute, the distinctive quality of that mark, depriving it of commercial value and injuring the business reputation of Plaintiff, in violation of the Florida dilution statute, Fla.Stat. § 495.151.  By their actions as described in this Complaint, Defendants willfully intended to trade on Plaintiff's reputation and cause dilution of its famous mark.

88.     WHEREFORE, Plaintiff demands judgment against Defendants as set forth in the Prayer for Relief.

**COUNT VIII**
**Florida Unfair and Deceptive Trade Practices Act Against All Defendants**

89.     Paragraphs 1 through 38 are incorporated by reference as if fully set forth herein.

90.     This Court has original jurisdiction over this pendent claim pursuant to 28 U.S.C. § 1338(b) and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

91.     Defendants, by their acts aforesaid, have engaged, and are engaging, in "[u]nfair methods of competition, ... and unfair [and] deceptive acts or practices in the

conduct of ... trade or commerce" in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.204(1).

92.     WHEREFORE, Plaintiff demands judgment against Defendants as set forth in the Prayer for Relief.

**COUNT IX**
**Florida Statutory False Advertising Against All Defendants**

93.     Paragraphs 1 through 38 are incorporated by reference as if fully set forth herein.

94.     This Court has original jurisdiction over this pendent claim pursuant to 28 .S.C. § 1338(b) and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

95.     Defendants, by their acts aforesaid, have engaged, and are engaged, in false advertising in violation of Fla. Stat. §§. 817.06 and 817.40-817.47.

96.     WHEREFORE, Plaintiff demands judgment against Defendants as set forth in the Prayer for Relief.

**COUNT X**
**Common Law Unfair Competition Against All Defendants**

97.     Paragraphs 1 through 38 are incorporated by reference as if fully set forth herein.

98.     Defendants' use of copies of the Trademark constitutes passing off, infringement and misappropriation of the Trademark actionable under the law of unfair competition.

99.     Defendants' individual acts as pleaded above taken together create a cumulative effect that adds up to unfair competition and shows Defendants' bad intent.

100.    WHEREFORE, Plaintiff demands judgment against Defendants as set

forth in the Prayer for Relief.

## COUNT XI
## Common Law Misappropriation Against All Defendants

101.    Paragraphs 1 through 38 are incorporated by reference as if fully set forth herein.

102.    Plaintiff invested substantial time, effort and money in creating, developing and popularizing the Trademark.

103.    Defendants appropriated the fruits of Plaintiff's labor at little or no cost, and Defendants represented that it was the creator, manufacturer and distributor of the Original Incense Product sold by Plaintiff.

104.    WHEREFORE, Plaintiff demands judgment against Defendants as set forth in the Prayer for Relief.

## COUNT XIII
## Injunctive Relief Against All Defendants

105.    Paragraphs 1 through 38 are incorporated by reference as if fully set forth herein.

106.    Plaintiff is the owner of the Trademark, has a protectable interest in the Trademark, and has not authorized Defendants to use it.

107.    Defendants are engaging in the unauthorized use of the Trademark by placing it in and on the Domains, using it in the Domain Names representing, expressly and implicitly, that it is the owner of the Trademark.

108.    Because Defendants have appropriated exact copies of the Trademarks, Defendants' use of the Trademarks is likely to and actually does cause confusion among the general public and those purchasing the products.

109.    Plaintiff is substantially likely to prevail on the merits of the claims asserted herein against Defendants.

110.    Plaintiffs have no adequate remedy at law and will be irreparably harmed if an injunction is not entered against Defendants because, inter alia:

a.      monetary damages alone are not an adequate remedy to deter Defendants from impermissibly using the Trademark and associating them with goods which are not of the same or comparable quality or blend as the Original Incense Product;

b.      the damages Plaintiffs will suffer by Defendants' actions will be difficult to measure, cannot be fully redressed by a monetary award, and cannot be fully repaired by paying monetary damages;

c.      the balance of the harms favors entry of an injunction against Defendants - greater harm will occur to Plaintiffs if an injunction is not issued than will occur to Defendants if enjoined as requested; and

d.      the public interest will be harmed if Defendants are permitted to misrepresent the products in commerce and mislead consumers as to their source, characteristics and quality.

111.    WHEREFORE, Plaintiff seeks injunctive relief as set forth herein and as set forth in the Prayer for Relief

## COUNT XIV
## Declaratory Judgment Against All Defendants

112.    Paragraphs 1 through 38 are incorporated by reference as if fully set forth herein.

113.    Defendants have asserted a right to use the Trademarks in commerce, as

exemplified by their marketing, websites, and general use of the Trademarks in connection with the Barely Legal Incense Products.

114.    There is a genuine dispute among the parties as to the ownership of the Trademarks, specifically whether Defendants have misappropriated them, are authorized to otherwise use them on their products and in their marketing, and are authorized to register them as Defendants' trademarks.

115.    WHEREFORE, Plaintiff requests that the Court declare the rights and other legal relations between the parties in this case concerning the Trademarks, along with all other necessary or proper relief based on the declaratory judgment or decree.

## PRAYER FOR RELIEF

Plaintiff prays for judgment against Defendants as follows:

1.    For an order permanently enjoining Defendants, collectively and individually, and their officers, shareholders, partners, principals, agents, assignees, beneficiaries, successors, licensees, distributors, attorneys, proxies, alter egos, aliases, and all other persons acting in concert with Defendants collectively or individually, from:

(a)    registering or using as a trade name, trademark, service mark, Internet domain name, or portion thereof, any name or term that incorporates, imitates, or is confusingly similar to the Trademark;

(b)    purchasing, selling, or using any form of advertising including keywords or "Adwords" in Internet advertising containing any mark that incorporates, initiates, or is confusingly similar to Plaintiff's "Mr. Nice Guy" Trademark, and requiring Defendants, when purchasing or selling Internet advertising using keywords, Adwords or the like, to activate the name "Mr. Nice Guy" as a

negative keyword or negative Adword in any Internet advertising purchased, sold or used;

(c)     infringing the Trademark, including all written and spoken terms equivalent or confusingly similar thereto;

(d)     using the Trademark or any name or mark that incorporates, imitates, or is reminiscent of or confusingly similar thereto, for any product or service, or in any letterhead, sign, website, advertising or promotion, e-mail or other sales solicitation or business listing, either in print, broadcast, electronic or other form, either separately or compositely with other words;

(e)     using the Trademark, or any name or mark confusingly similar thereto, as a corporate and/or trade name and/or fictitious name or portion thereof;

(f)     making representations, directly or indirectly, to anyone, anywhere, by any means, including but not limited to unauthorized co-branding, that Defendants are related to, associated or affiliated with, or sponsored, endorsed or approved by Plaintiff;

(g)     in any manner depicting, uttering or imitating the Trademark for the purpose of misappropriating the trade and goodwill of Plaintiff by association, imitation, fraud, mistake or deception; and

(h) unfairly competing with Plaintiff in any manner.

2.     For an order holding that Defendants' acts described in this Complaint constitute: federal unfair competition and false advertising under 15 U.S.C. § 1125(a); federal trademark dilution under 15 U.S.C. § 1125(c); federal trademark infringement under 15 U.S.C. § 1114(1); federal trademark cyberpiracy under federal 15 U.S.C. §

1125(d); trademark counterfeiting under 15 U.S.C. § 1114(1); cybersquatting under 15 U.S.C. § 1125(d); violation of the Florida dilution statute, Fla.Stat. § 495.151 (2008); violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.* (2008); violation of the Florida false advertising statute, §§ 817.06 and 817.40-817.47; and common law unfair competition, misappropriation and interference with prospective business advantage and business expectancies.

3. For an order directing Defendants to file with this Court and serve upon Plaintiff within thirty (30) days after service of the injunction, a report in writing, under oath, setting forth in detail the manner and form in which Defendants have complied with, and will continue to comply with, the injunction and further orders of this Court.

4. For an accounting of profits pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).

5. For lost profits and damages in such amount as may appear appropriate following a trial on the merits, pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. §1117(a).

6. For statutory damages in the amount of $100,000 per counterfeit domain name, pursuant to 15 U.S.C. § 1125(d)(1)(c).

7. For treble damages pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).

8. For statutory damages pursuant to the Anticounterfeiting Consumer Protection Act of 1996, Pub. L. No. 104-153, § 7, 110 Stat. 1386 (July 2, 1996), codified at Section 35(c) of the Lanham Act, 15 U.S.C. § 1117(c).

9.      For costs and attorney fees pursuant to Section 35(a) of the Lanham Act,

15 U.S.C. §1117(a), and Fla.Stat. §501.2105.

10.      For such other and further relief as the Court may deem just and proper

Respectfully submitted this 31st day of August, 2011.

By: /s/ James D. Pacitti
James D. Pacitti, Esquire
Florida Bar Number: 119768
15233 Burbank Boulevard
Los Angeles, California 91411
Tel: 800.590.6905
Fax: 866.684.6734
Email: jpacitti@pacittilaw.com
Attorney for KRATOM LAB, INC.