IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO.: 9:11cv80987

KRATOM LAB, INC.,

Plaintiff,

v.

DANIEL MANCINI and DAVID FIORE, Individually, and DOUBLE D'S TOBACCO OF STUART, INC., RYO CIGARETTES OF ST. LUCIE, LLC and RYO CIGARETTES OF BOCA, LLC,

Defendants.

**DEFENDANTS' ORIGINAL ANSWER**

Defendants, DANIEL MANCINI and DOUBLE D'S TOBACCO OF STUART, INC., by and through their undersigned attorney, file this original answer to plaintiff, Kratom Lab, Inc.'s original complaint.

**A. Admissions & Denials**

**Introduction**

1. Defendants deny the allegations in Paragraph 1 of Plaintiff's Complaint. Furthermore, Defendants state that Plaintiff sold its Original Incense Product to Defendant, Mancini, for the express purpose of resale including resale on a wholesale basis. Defendants admit they did resell Plaintiff's product via retail and wholesale efforts and that all such resales were authorized by Plaintiff. Furthermore, the Original Incense Product is not and was not a proprietary product owned by Plaintiff, but instead was a generic product manufactured in China and distributed by numerous persons in the

United States under numerous different and like names, e.g. K-2. Numerous U.S. distributors of the product used the same name and packaging as Plaintiff to distribute the same and/or a substantially similar product.[1] Presently said packaging is also manufactured and printed in China by persons associated with the manufacturing of the active ingredient used in Original Incense Product. As a result of the widespread use of the Original Incense Product as a synthetic substitute for marijuana, laws were enacted in March, 2011 to make it illegal to sell the Original Incense Product. As a result of the then pending legislation, Plaintiff stopped selling the Original Incense Product to Defendant on or about December, 2010 stating it did not want to restock until it was sure it could provide a product sufficiently distinct from the Original Incense Product that it would be legal despite the then proposed legislation.

In June or July, 2010, during the parties' business transactions and before Plaintiff's registration date, Defendant Mancini did register the domain name mrniceguywholesale.com for the express purpose of reselling the more than 5000 units per week he was buying from Plaintiff. Plaintiffs were told about the website and Plaintiff knew Defendants purchased the products and encouraged Mancini to sell as much of it as he could as quickly as he could via wholesale and retail efforts and told Defendant Mancini of the urgency created by the pending efforts to make the product illegal.

---

[1] While the herbal aspect of the product to which the chemical was applied varied from vendor to vendor, the chemical was the generic component of the product.

Nonetheless, Plaintiff also represented to Defendant Mancini that it was confident it would be able to provide a legal substitute if and when the Original Incense Product was outlawed.

As a result of Plaintiff's decision to stop supplying Defendants in December, 2010, Defendant was approached by various competitors of Plaintiff who offered to supply them with the Original Incense Product which was also sold under the same name and mark as the one Plaintiff was using. Defendants chose not to do so and instead created its own new brand, barely legal incense, for a new formula of incense being offered to him by the Chinese manufacturer of the Original Incense Formula.

Defendants never again sold the Original Incense Formula under any mark, much less Plaintiff's alleged mark. Furthermore, because the Mr. Nice Guy name was commonly in use in commerce by Defendant and by numerous other suppliers a the time Plaintiff sought trademark protection, and because Plaintiff's allegedly proprietary formula became illegal before the registration date, Defendants believe Plaintiff's certification to the USPTO were fraudulent. Specifically, Plaintiff knew it did not create the name or mark, knew it did not introduce the name or mark into commerce. Defendants know this because in May, 2010, when Plaintiff's principles first approached Defendants about reselling the product, Plaintiff's principles bragged they had taken the name and packaging right out of the 1998 movie "Half Baked." In that movie one of the characters was selling marijuana in a substantially similar package labeled a substantially similar logo under the name "Mr. Nice Guy". Defendant, Mancini, was familiar with the movie and knew their claim in this regard was true. As such, when Plaintiff filed for trademark protection, Plaintiff knew the name and mark were in substantial use by others,

including but not limited to by the Defendants in their wholesale domain name and knew Defendant's product could not lawfully be sold in commerce in the U.S. before the registration was issued. Such prior use was known to Plaintiff and was contrary to Plaintiff's trademark application verification as required by Title 15 §1051. Copies of Plaintiff's alleged mark in use by others before Plaintiff's August 29, 2010 registration date are attached as composite Exhibit "A" hereto.

2. Defendants deny the allegations in Paragraph 2 and deny Plaintiff has any damages caused by Defendant or any legal basis upon which the relief sought should be granted.

**Parties**

3. Defendants are without knowledge to allegations contained in Paragraph 3 and therefore deny.

4. Defendants deny the allegations contained in Paragraph 4.

5. Defendants are without knowledge to allegations contained in Paragraph 5 and therefore deny.

6. Defendants admit the allegations contained in Paragraph 6.

7. Defendants admit the allegations contained in Paragraph 7.

8. Defendants deny the allegations contained in Paragraph 8.

**Jurisdiction and Venue**

9. Defendants admit the allegations contained in Paragraph 9.

10. Defendants admit the allegations contained in Paragraph 10.

11. Defendants admit the allegations contained in Paragraph 11 as to venue only, but deny the remaining allegations in Paragraph 11.

**Statement of Facts**

12. Defendants deny Plaintiff created or produced the Original Incense Product and that the product it sold was anything but generic synthetic marijuana.

13. Defendants deny Plaintiff created the Original Incense Product and state that despite the allegation the allegations contained in Paragraph 13 that Plaintiff distributed the Original Incense Product under the alleged marks Plaintiff fails to allege it created the marks or that it was the only one using the mark in commerce.

14. Defendants deny the allegations contained in Paragraph 14 because Plaintiff stopped selling the Original Incense Product in December, 2010 in anticipation it would become illegal, which did occur in March, 2011. On information and belief, Plaintiff began selling a different incense product under the same name before March, 2011.

15. Defendants are without knowledge as to allegations contained in Paragraph 15 and therefore deny.

16. Defendants deny allegations contained in Paragraph 16. Consumers have become accustomed to associating the alleged mark with a generic form of synthetic marijuana and are aware that the formula for the product changed in lock step with the law.

17. Defendants deny Plaintiff's allegation that said bulk purchasers and/or Plaintiff had any understanding that Defendant or any other bulk purchasers were limited to retail resales. To the contrary, Defendant and most, if not all, other bulk purchasers were encouraged to wholesale the product. Furthermore, the marks were in use by Plaintiff and others in and before August, 2010 and thus before Plaintiff applied for trademark protection. Defendants admit they were never given the right to represent

themselves as the owners of the marks and/or the then non existent Trademark or the right to represent themselves a the creators of the Original Incense Product. Furthermore, Plaintiff knew and encouraged Defendants to wholesale the product.

18. Defendants admit that on or about July, 2010, Defendants suggested to Plaintiff that they sell Defendants their product in bulk and the Defendants would in turn increase the wholesale distribution effort. Defendants admit that at that time they operated a tobacco store at said location. Defendants deny the remainder of the allegation.

19. Defendants admit Plaintiff agreed to sell Original Incense Product to Defendants, but deny the remainder of the allegation contained in Paragraph 19. To the contrary, Plaintiff never asserted a right to the marks and encouraged Defendants to get the product into the market by whatever means available. Furthermore, Defendants deny the implication that they ever held themselves out as the owner of the "trademark" or the manufacturer of the Original Incense Product.

20. Defendants are without knowledge as to allegations contained in Paragraph 20 and therefore deny. Furthermore, Defendants' allege that Plaintiff's verifications as to the first use, originality and product category were fraudulent because Plaintiff did not create the marks nor introduce the marks into commerce and because Plaintiff's application did not put the USPTO on actual notice to the type or category of product being sold in connection with the marks. To the contrary, the marks were in use by numerous distributors of the same product. Also, Plaintiff's right to use the mark in connection with the Original Incense Product ended in March, 2011 before the marks

were registered when it became illegal to distribute the product anywhere in the United States.

20. [sic] Defendants admit the allegations contained in the second Paragraph numbered 20.

21. Defendants have no knowledge of what other people said to Plaintiff and therefore deny the allegations contained in Paragraph 21. Furthermore, Defendants deny they ever represented to anyone they were the makers of the Original Incense Product verbally, by sign or placard or any other means of communication. Defendants admit they began advertising their own brand of products based upon a different and still legal formula.

22. Defendants admit such a meeting occurred, but deny the remainder of the allegations contained in Paragraph 22. Furthermore, Defendant Mancini states that Plaintiff's principals, Messrs. Harrison and Shealey, threatened to kill Messrs. Mancini and Fiore at said meeting.

23. As to allegations contained in Paragraph 23, Defendants admit they re-sold Plaintiff's product through its wholesale website until shortly before the Original Incense Formula became illegal to sell. However, Defendants deny Plaintiff found out about Defendants' wholesale website through investigation. To the contrary, Defendant Mancini told Plaintiff of his site and of the success he was having during the numerous personal encounters he had which were necessitated by the fact Plaintiff insisted that payment for the purchases be made in person and in cash. Furthermore, Defendants deny any affiliation with the domain names set forth in allegation 23, but for

mrniceguywholesale.com, which was known to Plaintiff's to be in use before Plaintiff filed its trademark application.

24. As to allegations contained in Paragraph 24, Defendants deny any such use was not authorized. Defendants admit the mrniceguywholesale.com website was shut down and traffic redirected per instructions from Plaintiff that due to the then pending changes of the law, the Original Incense Product would no longer be available and the Plaintiff would let them know if and when a new product would be made available. Furthermore, Defendants deny Plaintiff did not comment on Defendants' use of the domain name they were using to market the product. To the contrary, Plaintiff encouraged every effort to sell as much of the product as humanly possible until such time they informed Defendants the Original Incense Formula was discontinued. Without specificity as to which website the remainder of the allegation pertains to Plaintiff is unable to respond with more specificity.

25. Defendants admit that Plaintiffs confronted Mancini and Fiore about the decision to launch their own product "barely legal incense" and that Plaintiff's principles, Harrison and Shealey, again threatened Mancini and Fiore with violence, but Defendants deny the remainder of allegation 25.

26. Defendants admit it used the name of the product to resell the product through the Internet and that included its use as a meta-tag by which search engine locates Defendants authorized website. Defendants deny the remainder of the allegation.

27. Defendants deny the allegations contained in Paragraph 27. mrniceguywholesale.com is the only website Defendants operated.

28. Defendants deny the allegations contained in Paragraph 28.

29. Defendants deny the allegations contained in Paragraph 29.

30. Defendants deny the allegations contained in Paragraph 30.

31. Defendants deny the allegations contained in Paragraph 31.

32. Defendants deny the allegations contained in Paragraph 32.

33. Defendants deny the allegations contained in Paragraph 33.

34. Defendants admit they acknowledged their role as a wholesaler of Plaintiff's product, but deny the remaining allegations contained in Paragraph 34.

35. Defendants deny the allegations contained in Paragraph 35.

36. Defendants deny the allegations contained in Paragraph 36. Furthermore, while the Original Incense Product is now illegal throughout the U.S., barely legal incense is not.

37. Defendants deny the allegations contained in Paragraph 37.

38. Defendants deny the allegations contained in Paragraph 38.

**Count I**

39. Defendants reincorporate their answers to paragraphs 1-38 above as if fully set forth herein.

40. Defendants deny the allegations contained in Paragraph 40.

41. Defendants deny the allegations contained in Paragraph 41.

42. Defendants deny the allegations contained in Paragraph 42.

43. Defendants deny the allegations contained in Paragraph 43.

44. Defendants deny the allegations contained in Paragraph 44.

45. WHEREFORE, Defendants, Mancini and Double D's request Plaintiff's complaint be dismissed with prejudice and all other relief the Court deems just and proper.

**Count II**

46. Defendants reincorporate their answers to paragraphs 1-38 above as if fully set forth herein

47. Defendants deny the allegations contained in Paragraph 47.

48. Defendants deny the allegations contained in Paragraph 48.

49. Defendants deny the allegations contained in Paragraph 49.

50. Defendants deny the allegations contained in Paragraph 50.

51. Defendants deny the allegations contained in Paragraph 51.

52. WHEREFORE, Defendants, Mancini and Double D's request Plaintiff's complaint be dismissed with prejudice and all other relief the Court deems just and proper.

**Count III**

53. Defendants reincorporate their answers to paragraphs 1-38 above as if fully set forth herein.

54. Defendants deny the allegations contained in Paragraph 54.

55. Defendants deny the allegations contained in Paragraph 55.

56. Defendants deny the allegations contained in Paragraph 56.

57. WHEREFORE, Defendants, Mancini and Double D's request Plaintiff's complaint be dismissed with prejudice and all other relief the Court deems just and proper.

**Count IV**

58. Defendants reincorporate their answers to paragraphs 1-38 above as if fully set forth herein.

59. Defendants deny the allegations contained in Paragraph 59, and further state that the name "Mr. Nice Guy" for incense type products was common place before Plaintiff filed a trademark application.

60. Defendants admit it registered and used the domain name mrniceguywholesale.com for the wholesale distribution of Plaintiff's Original Incense Product through December, 2010. Defendants deny the remaining allegations contained in Paragraph 60.

61. Defendants deny the allegations contained in Paragraph 61.

62. Defendants deny the allegations contained in Paragraph 62.

63. WHEREFORE Defendants, Mancini and Double D's request Plaintiff's complaint be dismissed with prejudice and all other relief the Court deems just and proper.

**Count V**

64. Defendants reincorporate their answers to paragraphs 1-38 above as if fully set forth herein.

65. Defendants deny the allegations contained in Paragraph 65.

66. Defendants deny the allegations contained in Paragraph 66.

67. Defendants deny the allegations contained in Paragraph 67.

68. Defendants deny the allegations contained in Paragraph 68.

69. Defendants deny the allegations contained in Paragraph 69.

70. Defendants deny the allegations contained in Paragraph 70.

71. Defendants deny the allegations contained in Paragraph 71.

72. Defendants deny the allegations contained in Paragraph 72.

73. WHEREFORE, Defendants, Mancini and Double D's request Plaintiff's complaint be dismissed with prejudice and all other relief the Court deems just and proper.

**Count VI**

74. Defendants reincorporate their answers to paragraphs 1-38 above as if fully set forth herein.

75. Defendants deny the allegations contained in Paragraph 75.

76. Defendants deny the allegations contained in Paragraph 76.

77. Defendants deny the allegations contained in Paragraph 77.

78. Defendants deny the allegations contained in Paragraph 78 and further state that because the "Mr. Nice Guy" name was and is used by numerous incense product manufacturers and distributors, the alleged mark is available to use by any one including Defendants is they choose to do so.

79. Defendants admit they have never used the "Trademark" to identify themselves, but deny the remainder of the allegations contained in Paragraph 79.

80. Defendants deny the allegations contained in Paragraph 80 and further state that they did use the "Mr. Nice Guy" name in connection with the authorized resale of Plaintiff's Original Incense Product before Plaintiff claimed ownership to the mark.

81. Defendants deny the allegations contained in Paragraph 81 and further state that they did use the "Mr. Nice Guy" name in connection with the authorized resale of Plaintiff's Original Incense Product before Plaintiff claimed ownership to the mark.

82. Defendants deny the allegations contained in Paragraph 82.

83. Defendants deny the allegations contained in Paragraph 83.

84. WHEREFORE, Defendants, Mancini and Double D's request Plaintiff's complaint be dismissed with prejudice and all other relief the Court deems just and proper.

**Count VII**

85. Defendants reincorporate their answers to paragraphs 1-38 above as if fully set forth herein.

86. Defendants admit the allegations contained in Paragraph 86.

87. Defendants deny the allegations contained in Paragraph 87.

88. WHEREFORE, Defendants, Mancini and Double D's request Plaintiff's complaint be dismissed with prejudice and all other relief the Court deems just and proper.

**Count VIII**

89. Defendants reincorporate their answers to paragraphs 1-38 above as if fully set forth herein.

90. Defendants admit the allegations contained in Paragraph 90.

91. Defendants deny the allegations contained in Paragraph 91.

92. WHEREFORE, Defendants, Mancini and Double D's request Plaintiff's complaint be dismissed with prejudice and all other relief the Court deems just and proper.

**Count IX**

93. Defendants reincorporate their answers to paragraphs 1-38 above as if fully set forth herein.

94. Defendants admit the allegations contained in Paragraph 94.

95. Defendants deny the allegations contained in Paragraph 95.

96. WHEREFORE, Defendants, Mancini and Double D's request Plaintiff's complaint be dismissed with prejudice and all other relief the Court deems just and proper.

**Count X**

97. Defendants reincorporate their answers to paragraphs 1-38 above as if fully set forth herein.

98. Defendants deny the allegations contained in Paragraph 98.

99. Defendants deny the allegations contained in Paragraph 99.

100. WHEREFORE, Defendants, Mancini and Double D's request Plaintiff's complaint be dismissed with prejudice and all other relief the Court deems just and proper.

**Count XI**

101. Defendants reincorporate their answers to paragraphs 1-38 above as if fully set forth herein.

102. Defendants deny the allegations contained in Paragraph 102.

103. Defendants deny the allegations contained in Paragraph 103.

104. WHEREFORE, Defendants, Mancini and Double D's request Plaintiff's complaint be dismissed with prejudice and all other relief the Court deems just and proper.

**Count XIII [sic]**

105. Defendants reincorporate their answers to paragraphs 1-38 above as if fully set forth herein.

106. Defendants deny the allegations contained in Paragraph 106.

107. Defendants deny the allegations contained in Paragraph 107.

108. Defendants deny the allegations contained in Paragraph 108.

109. Defendants deny the allegations contained in Paragraph 109.

110. Defendants deny the allegations contained in Paragraph 110.

111. WHEREFORE, Defendants, Mancini and Double D's request Plaintiff's complaint be dismissed with prejudice and all other relief the Court deems just and proper.

**Count XIV**

112. Defendants reincorporate their answers to paragraphs 1-38 above as if fully set forth herein.

113. Defendants deny the allegations contained in Paragraph 113.

114. Defendants admit there is a dispute over whether Plaintiff has the trademark protection it claims to have, but deny such dispute is genuine and the remainder of the allegations contained in Paragraph 114.

115. WHEREFORE, Defendants, Mancini and Double D's request Plaintiff's complaint be dismissed with prejudice and all other relief the Court deems just and proper.

116. Defendants Mancini and Double D's Tobacco have retained the undersigned and are obligated to pay a reasonable fee for services rendered in this matter.

117. Pursuant to various statutes under which Plaintiff seeks relief, the prevailing party is entitled to recover attorneys fees.

WHEREFORE Defendants request a judgment against Plaintiff for reasonable attorneys' fees and costs.

**First Affirmative Defense**

As its First Affirmative Defense, Defendants assert Plaintiff's Trademark registration was obtained by fraud. Specifically, Plaintiffs knowingly took another's work product protected by Federal Copyright Laws and claimed it as their own. Furthermore, Plaintiffs knew when they filed their Trademark application that others were using the word mark and the same and substantially similar marks in commerce for substantially similar products. Furthermore, Plaintiff knowingly misrepresented the category of the product the marks were intended to be used in connection with. Specifically, although the product says it is not intended for human consumption, Plaintiff knows it was not intended to produce any manner of pleasant fragrance or aroma either. Also, Plaintiff knew while the application was pending that a law had been enacted making Plaintiff's produce used in connection with the mark illegal. Defendants assert that had Plaintiff's application verification been truthful, the application for registration of the mark would have been denied.

**Second Affirmative Defense**
**Illegality**

Plaintiff's complaint is based on its alleged protected right to use the marks in connection with an illegal proprietary Original Incense Product. Said Original Incense Product was first introduced to Defendants by Plaintiff in May, 2010. Said product garnered substantial public attention and legislative action. As a result, the Original Incense Product was outlawed in March, 2011. Since that date, neither Plaintiff nor anyone else has the right to use the alleged marks in connection with the sale of the Original Incense Product in any jurisdiction in which Trademark Protection is afforded.

**Third Affirmative Defense**
**Permission**

To the extent Plaintiff has any right to exclude others from use of the alleged marks, Defendants had permission to use the word mark in their wholesale domain name.

WHEREFORE Defendants request Plaintiff's Trademark registration be cancelled and Defendants be awarded damages pursuant to U.S.C.S. Title 15 §1120 and all other relief the court deems just and proper.

**RYAN & RYAN ATTORNEYS, P.A.**
Attorneys for Defendants, Mancini and Double D's Tobacco of Stuart, Inc.
631 U.S. Highway One, Suite 100
North Palm Beach, FL 33408
(561) 841-3420
(561) 841-3424f fax

By: /s/ James D. Ryan
JAMES D. RYAN
Florida Bar no. 976751
jdr@attyryans.com

Certificate of Service

I hereby certify that on February 16, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the matter specified, either vial transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/ JAMES D. RYAN
James D. Ryan
Florida Bar no. 976751
jdr@attyryans.com

SERVICE LIST

James D. Pacitti, Esq.
Florida Bar No. 119768
Email: jpacitti@pacittilaw.com
15223 Burbank Boulevard
Los Angeles, California 91411
Phone: (800) 590-6905
Fax: (866) 684-6734