UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-80987-CIV-MARRA

KRATOM LAB, INC.,

       Plaintiff,

vs.

DANIEL MANCINI and DAVID FIORE,
individually, and DOUBLE D'S TOBACCO
OF STUART, INC, RYO CIGARETTES OF
ST. LUCIE, LLC and RYO CIGARETTES
OF BOCA, LLC,

       Defendants.

_____/

## OMNIBUS OPINION AND ORDER

This cause comes before the Court upon Defendants' Motion for Summary Judgment and Incorporated Memorandum in Support Thereof (DE 39); Plaintiff's Motion for Summary Judgment and Incorporated Memorandum in Support Thereof (DE 47); Defendants' Motion to Dismiss or Strike Plaintiff's Amended Complaint (DE 48); and Defendants Daniel Mancini and Double D's Tobacco of Stuart, Inc.'s Motion for Sanctions (DE 66).[1] These motions are briefed and ripe for review. The Court has considered the motions and is otherwise advised in the premises.

## I. Background

This case stems from a trademark dispute over synthetic marijuana.[2] Plaintiff Kratom Lab, Inc. ("Kratom Lab") brings counts against Defendants Daniel Mancini ("Mancini") and Double D's

_____

[1] On April 18, 2013, the Court held oral argument on both motions for summary judgment and Defendants' motion to dismiss or strike.

[2] The Court takes judicial notice of its own records including the records of Dylan Harrison ("Harrison") and John Shealey's ("Shealey") criminal case: case number 12-CR-80218-MARRA. *See United States v. Rey*, 811 F.2d 1453, 1457 n.5 (11th Cir. 1987) ("A court may take judicial notice of its own records and the records of inferior courts."). It is undisputed that Harrison and Shealey are the principals of Plaintiff Kratom Lab, Inc. *See* (DE 47 at 3–6); (Case No. 12-CR-80218-MARRA: DE 128 at 13 ¶ 6; DE 147 at 12); (DE 46 ¶ 23).

Tobacco of Stuart, Inc. ("Double D's") (collectively "Defendants") for trademark infringement under section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a); trademark cyberpiracy under 15 U.S.C. § 1125(d); and cybersquatting under the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d). In addition to damages, Kratom Lab seeks injunctive relief and a declaratory judgment. The relevant facts are undisputed.

In December of 2009, Kratom Lab created, produced, and began to sell a product labeled incense "not for human consumption." (DE 46 ¶ 12) ("Am. Compl."). The packaging of this product bore the name "Mr. Nice Guy," which Kratom Lab incorporated into an original graphic design logo. (Am. Compl. ¶ 13). The Court will refer to the "Mr. Nice Guy" name and the original graphic design logo collectively as the "Trademark." (At this point, the name and logo were not officially trademarked).

Because of the popularity of the product, Kratom Lab sought to distribute it online and secured the domain "www.mr-nice-guy.com" in around January of 2010. (Am. Compl. ¶ 15). In around July of 2010, Kratom Lab started selling the product directly to third party retailers in bulk to keep up with demand. (Am. Compl. ¶ 17). It was at around this time that Mancini and David Fiore, who owned and operated a tobacco store through Double D's, came into contact with Kratom Lab regarding buying the product in bulk for retail sale to consumers. (Am. Compl. ¶ 18).[3] Kratom Lab agreed to sell to Mancini and Double D's. (Am. Compl. ¶ 19).

Kratom Lab applied for a federal trademark on the Trademark on August 24, 2010. (DE 46,

---

[3] Defendant Fiore is no longer a party to this action. (DE 24). Mancini and Double D's are the only remaining defendants. The Court notes that although Kratom Lab filed a notice of voluntary dismissal as to Double D's (DE 68), that notice was filed after Double D's filed an answer to Kratom Lab's initial complaint (DE 22). Thus, under Federal Rule of Civil Procedure 41(a), Double D's could only be dismissed pursuant to a joint stipulation. Double D's made clear at oral argument that it does not stipulate to this dismissal and remains a party to this action for purposes of summary judgment and potential sanctions.

Attach. 1).[4] The application categorized Kratom Lab's product as "[h]erbal, non-consumable, incense." *Id.* Before the Trademark was officially registered by the United States Patent and Trademark Office, the DEA banned a component of Kratom Lab's product—the chemical ingredient JWH-018—as a Schedule I controlled substance. (DE 40, Attach. 1:Shealey Dep. at 17) (Case No. 12-CR-80218-MARRA: DE 128 at 12 ¶ 3; DE 147 at 11 ¶ 3).[5] The fact that the incense contained JWH-018 was not disclosed on the trademark application (presumably because the incense was categorized as not for human consumption). Thus, notwithstanding the pronouncement of JWH-018's illegality, the Patent and Trademark Office officially registered the Trademark on April 19, 2011.

Kratom Lab filed this action on August 31, 2011 alleging that Defendants infringed on the Trademark in various ways including by purchasing the domain "mrniceguywholesale.com" and other similarly named websites and generally by holding themselves out as the manufacturer and distributor of Kratom Lab's product. Meanwhile, in response to the DEA's ban of JWH-018, Harrison and Shealey changed the formula of their incense so that it did not contain the chemical. (Shealey Dep. at 17–18). Nevertheless, both Harrison and Shealey were arrested on July 28, 2012 for the manufacture and sale of their incense under the Analogue Act, 21 U.S.C. § 813, which criminalizes the distribution for human consumption of products with substantially similar chemical

---

[4] At his deposition, Harrison testified as follows:

**Q.** Did you have anything to do with the application to trademark that logo or those words?
**A.** Yes.
**Q.** And what role did you play with regards to the trademark application?
**A.** Every role.
**Q.** Did you complete the trademark application?
**A.** I paid an attorney to complete it.

(DE 40, Attach. 2: Harrison Dep. at 20).

[5] The DEA banned JWH-018 as a synthetic cannabinoid, which refers to a chemical substance that mimics the physical and psychological effects of marijuana and is intended to be ingested in the human body, mainly through smoking. (Case No. 12-CR-80218-MARRA: DE 128 at 12 ¶ 2; DE 147 at 11 ¶ 2).

structures and pharmacological effects as controlled substances.[6]

Harrison and Shealey have since pleaded guilty to a criminal information charging violations of the Analogue Act. The factual proffers annexed to the plea agreements set forth, among other things, that the "[p]ackaging on the Mr. Nice Guy synthetic cannabinoid products falsely stated that the product was 'incense' or 'potpourri' and was 'not for human consumption,' when the defendant[s] knew otherwise." (Case No. 12-80218-CR-Marra/Matthewman; DE 128 ¶ 10, DE 147 ¶ 10).

Defendants move for summary judgment because Kratom Lab's fraudulent misrepresentation in the application that the incense was not for human consumption requires this Court to strike the Trademark from the Trade Mark Registry under 15 U.S.C. § 1119.[7] If Kratom Lab's trademark was fraudulently obtained and is therefore stricken, the argument goes, Kratom Lab's action for trademark infringement necessarily fails.

Kratom Lab responds by arguing that Harrison's and Shealey's guilty pleas should not collaterally estopp Kratom Lab from arguing that its product was not intended for human consumption based on the "not for human consumption" label on the product. Kratom Lab further argues that, even if the Court concludes it misrepresented the nature of the incense product by falsely stating that it was not for human consumption, that misrepresentation was immaterial because Defendants have not provided evidence that the Patent and Trademark Office would have denied a

---

[6] Section 813 of Title 21 of the United States Code provides that "[a] controlled substance analogue shall, to the extent intended for human consumption, be treated, for the purposes of any Federal law as a controlled substance in schedule I." Section 841(a) of Title 21 of the United States Code provides, in pertinent part, that "it shall be unlawful for any person knowingly or intentionally (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or (2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance."

[7] Section 1119 of Title 15 of the United States Code provides that "[i]n any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action. Decrees and orders shall be certified by the court to the Director, who shall make appropriate entry upon the records of the Patent and Trademark Office, and shall be controlled thereby."

truthful application representing the incense as "*for* human consumption." Finally, Kratom Lab argues that equitable principles should preclude Defendants from successfully having the Trademark invalidated because Defendants used the Trademark to their own benefit. For the reasons that follow, Defendants' motion for summary is granted.[8]

## II. Legal Standard

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant  is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The Court should not grant summary judgment unless it is clear that a trial is unnecessary, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party,  *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp.*, 477 U.S. at 323.  To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case.  *Id.* at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electronic Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must

---

[8] At oral argument, Kratom Lab conceded that its argument that a genuine factual dispute exists as to whether the Trademark was fraudulently obtained, if taken as true, would preclude the Court from granting summary judgment in Kratom Lab's favor. As explained below, the Court's conclusion that Kratom Lab fraudulently obtained the Trademark renders Kratom Lab's motion for summary judgment moot in any event.

support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) and (B).

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. *Anderson*, 477 U.S. at 257. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." *Anderson*, 477 U.S. 242, 249–50.

### III. Discussion

This case turns on whether Kratom Lab fraudulently obtained the Trademark at issue, and whether Defendants may have the Court cancel the mark under 15 U.S.C. § 1119. As set forth by the Eleventh Circuit,

> [a]t any time, a party may petition to cancel a registered mark on the ground that the registration was procured by fraud, even if that mark has become incontestable. An applicant commits fraud when he knowingly makes false, material representations of fact in connection with an application for a registered mark. Fraud further requires a purpose or intent to deceive the [Patent and Trademark Office] in the application for the mark. The party seeking cancellation on the basis of fraud must prove its claim by clear and convincing evidence. This is necessarily a heavy burden, and any doubt must be resolved against the charging party.

*Sovereign Military Hospitaller v. Florida Priory*, 702 F.3d 1279 (11th Cir. 2012) (citations and quotations omitted).

The first issue before the Court is whether Harrison's and Shealey's guilty pleas in the criminal case collaterally estopp Kratom Lab from arguing that the "not for human consumption" categorization of its product on the trademark application was not a misrepresentation. "Under the

doctrine of collateral estoppel a party is precluded from litigating an issue if (1) the identical issue has been (2) actually litigated in a prior suit which (3) could not have been decided without resolving the issue." *Matter of Raiford*, 695 F.2d 521 (11th Cir. 1983) (citations omitted). Here, Harrison and Shealey admitted in the factual proffers annexed to their plea agreements that "[p]ackaging on the Mr. Nice Guy synthetic cannabinoid products falsely stated that the product was 'incense' or 'potpourri' and was 'not for human consumption,' when the defendant knew otherwise." (Case No. 12-CR-80218-MARRA: DE128 at 14 ¶ 10; DE 147 at 13 ¶ 10).[9]

In *Matter of Raiford*, the Eleventh Circuit addressed the propriety of giving a guilty plea collateral effect:

> The use of a criminal conviction as conclusive of an issue in subsequent civil litigation, though not universally accepted, is well established today. Because the complainant's standard of proof is higher, and greater procedural protections attach in a criminal prosecution, a conviction is a sufficiently reliable determination of the relevant issue. . . . While some disagreement exists, most courts give a judgment based on a guilty plea the same collateral effect as any other criminal conviction, conclusive of all issues that would have been resolved by a conviction following a contested trial. There are good reasons for this approach. Although a guilty plea eliminates the need for a contested trial, a federal court cannot enter judgment upon the plea unless it determines that a factual basis exists for it. A federal criminal defendant wishing to avoid both a trial and any collateral estoppel effects may ask for court permission to plead *nolo contendre*. A defendant who fails to exercise this option cannot argue subsequently that the lack of a contested trial renders his plea ineffective for collateral estoppel purposes.

*Id.* at 523. Here, Harrison and Shealey pleaded guilty to violations of the Analogue Act and, along with those pleas, made factual admissions including admissions that they knew their incense was intended for human consumption. Based on the Eleventh Circuit's rationale in *Raiford*, the Court concludes that the pleas and accompanying factual admissions are effective for collateral estoppel purposes. Consequently, Kratom Lab is foreclosed from arguing that it did not misrepresent its

---

[9] As set forth above, *supra* note 5, a controlled substance analogue (such as Kratom Lab's "incense") will only be treated as a controlled substance to the extent that it is intended for human consumption.

product in the trademark application by categorizing it as "not for human consumption."

Moreover, the Court concludes that, as a matter of law, Kratom Lab's misrepresentation was material. As expressed in Harrison's and Shealey's guilty pleas, the incense was never intended to be distributed as anything other than for human consumption. If Kratom Lab had truthfully categorized its product as *for* human consumption and listed the chemical ingredient JWH-018 as a component of the product, the Patent and Trademark Office may have rejected the application once the DEA banned JWH-018 as a scheduled I controlled substance (particularly in light of the fact that the DEA banned JWH-018 before the Trademark was officially registered). *See Creagri, Inc. v. USANA Health Sciences*, 474 F.3d 626, 630 (9th Cir. 2007) ("[O]nly *lawful* use in commerce can give rise to trademark priority."). In any event, as it stands the Patent and Trademark Office never had the opportunity to assess the legality of Kratom Lab's product because Kratom Lab misrepresented what the product was. And based on the preclusive effect of Harrison's and Shealey's guilty pleas, the Court concludes that Kratom Lab subjectively intended to deceive the Patent and Trademark Office when it misrepresented its product as "not for human consumption." *See In re Bose Corp.*, 580 F.3d 1240, 1245 (Fed. Cir. 2009) ("Subjective intent to deceive . . . is an indispensable element in the [fraud] analysis.").

Finally, the Court rejects Kratom Lab's argument that equitable principles should preclude Defendants from seeking to invalidate the Trademark. Whether Defendants profited from using Kratom Lab's fraudulently obtained trademark is irrelevant because the trademark was *fraudulently obtained*. Kratom Lab had no valid trademark for Defendants to infringe.

Consistent with Defendants' position that Kratom Lab inappropriately seeks to enforce a

fraudulently obtained trademark, Defendants seek attorney's fees under 15 U.S.C. § 1117(a).[10] A court may award reasonable attorney's fees to the prevailing party in an exceptional trademark infringement case. 15 U.S.C. § 1117(a).  An "exceptional case is one that can be characterized as malicious, fraudulent, deliberate and willful, or one in which evidence of fraud or bad faith exists." *Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*, 253 F.3d 1332, 1335 (11th Cir. 2001) (citations omitted). "[A]n award of attorney's fees to a prevailing defendant may be justified when a plaintiff has brought an obviously weak Lanham Act claim and the evidence shows that the plaintiff acted in bad faith and with an improper motive." *Welding Svcs., Inc. v. Forman*, 301 F. App'x 862, 862–63 (11th Cir. 2008) (citation omitted); *Lipscher v. LRP Publ'ns, Inc.*, 266 F.3d 1305, 1319 n.10 (11th Cir. 2001) ("While an exceptional case [for a prevailing plaintiff] is characterized as one in which the acts of infringement can be characterized as malicious, fraudulent, deliberate, or willful, the legislative history to the Lanham Act makes it clear that attorney's fees are also available to prevailing defendants in exceptional cases." (quotation marks omitted)) (citing H.R.Rep. No. 93-524 (1974), reprinted in 1974 U.S.C.C.A.N. 7132, 7133).

Here, the requisite bad faith on the part of Kratom Lab is established—by clear and convincing evidence—through Harrison's and Shealey's guilty pleas. Based on the facts established in the pleas, Kratom Lab sought to enforce a trademark it knew to be fraudulently obtained against

---

[10] Section 1117(a) of Title 15 of the United States Code provides, "When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. *The court in exceptional cases may award reasonable attorney fees to the prevailing party.*" (emphasis added).

Defendants. Because the evidence shows that Kratom Lab acted in bad faith and with an improper motive, the Court has little trouble concluding that, as a matter of law, this action is an exceptional case justifying an award of attorney's fees to Defendants as prevailing parties.

## IV. Conclusion

At oral argument, Kratom Lab conceded that it had no cognizable claim if the Court concluded that Harrison's and Shealey's guilty pleas had collateral estoppel effect, that Kratom Lab's misrepresentation on the trademark application was material, and that Defendants were not foreclosed from seeking invalidation of Kratom Lab's trademark on equitable grounds. The Court has so concluded. Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendants' Motion for Summary Judgment and Incorporated Memorandum in Support Thereof (DE 39) is **GRANTED**. Judgment shall be entered separately. Kratom Lab's Trademark Registration Number 3947856 is **CANCELLED.** Plaintiff's Motion for Summary Judgment and Incorporated Memorandum in Support Thereof (DE 47) is **DENIED**. Defendants' Motion to Dismiss or Strike Plaintiff's Amended Complaint (DE 48) is **DENIED AS MOOT**. Defendants' request for an award of attorney's fees under 15 U.S.C. § 1117(a) is **GRANTED** to the extent the Court concludes that Defendants are entitled to fees. Defendants Daniel Mancini and Double D's Tobacco of Stuart, Inc.'s Motion for Sanctions (DE 66) is **DENIED AS MOOT** because it seeks the same award of attorney's fees that the Court grants under 15 U.S.C. § 1117(a). The Court retains jurisdiction to consider any motion for attorney's fees or costs as to amount.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 29th day of July, 2013.

_____
KENNETH A.  MARRA
United States District Judge

10